**FILED**

**November 14, 2016**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:03 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **DAVID BOYD,** | ) **Docket No.: 2016-03-0223** |
| Employee, | ) |
| **v.** | ) |
| **TENNESSEE CHILDREN'S HOME,** | ) **State File No.: 7135-2015** |
| Employer, | ) |
| **And** | ) |
| **TRUMBULL INSURANCE CO.,** | ) **Judge Lisa Lowe Knott** |
| Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER
## GRANTING PAST TEMPORARY PARTIAL DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, David Boyd, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Boyd requested the Court decide his interlocutory claim for temporary partial disability based on a review of the file without an evidentiary hearing. The employer, Tennessee Children's Home (TNCH), objected to Mr. Boyd's request for a file review determination and requested an evidentiary hearing. On October 16, the Court issued an Order Denying Request for a Decision Based Upon Review of the File and Granting Request for An In-Person Evidentiary Hearing. The Court conducted the Expedited Hearing on October 19, 2016. The central legal issue is whether Mr. Boyd is entitled to past temporary partial disability benefits. For the reasons set forth below, the Court finds Mr. Boyd is entitled to past temporary partial disability benefits for the time period of August 16, 2015, through November 17, 2015.[1]

### History of Claim

This claim involves an injury Mr. Boyd sustained to his right wrist on August 21,

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

2014, while employed by TNCH[2] as a residential counselor shift worker.[3] On that date, a resident tripped Mr. Boyd, which caused him to fall landing on his wrist. He immediately called and reported the injury to his supervisor, Director Chuck Kilpatrick, and subsequently provided a written statement. (Ex. 1.)

At first, Mr. Boyd thought he sprained/strained his wrist and it would resolve on its own. When his wrist symptoms failed to improve, Mr. Boyd contacted Human Resources Manager Dana Lawson to request medical treatment. Ms. Lawson assisted Mr. Boyd in submitting the appropriate paperwork to file a workers' compensation claim, and TNCH accepted the claim as compensable. (Ex. 1.)

Mr. Boyd initially treated with Dr. Shirley Price-Barnes, who diagnosed a fracture and referred him to orthopedist Dr. Robert Ivy. During initial conservative treatment with Dr. Ivy, Mr. Boyd's restrictions varied from five-pound- to twenty-five-pound restrictions, to no use of the right hand. TNCH accommodated Mr. Boyd's restrictions during this time period, and Mr. Boyd worked his regular hours at his regular rate of pay. Dr. Ivy eventually performed surgery on Mr. Boyd's right wrist on June 2, 2015. At that time, Dr. Ivy restricted Mr. Boyd from working for two weeks, and TNCH provided temporary total disability payments for that time period.

On June 16, Dr. Ivy released Mr. Boyd to return to transitional duty with no use of his right hand, and he continued the same restriction on July 14 and July 30. On September 22, Dr. Ivy modified Mr. Boyd's restriction to lifting limited to ten pounds, then released Mr. Boyd to normal work duties on November 17. On December 22, Dr. Ivy placed Mr. Boyd at maximum medical improvement (MMI) and assigned an impairment rating of 2% to the body as a whole. (Ex. 4.)

At the expedited hearing, Mr. Boyd testified that until August 14, TNCH accommodated his restrictions and provided regular work hours at his regular rate of pay. However, when he reported for work on August 14, 2015, the Director at that time, Rich Johnston, called him into a meeting. During the meeting, Mr. Johnston informed Mr. Boyd that he would continue to receive his same rate of pay but his daily hours were being reduced from 6 a.m. to 2 p.m. (eight hours) to 6 a.m. to 8 a.m. (two hours).

Mr. Boyd alleged that his hours were reduced because Mr. Johnston did not like him.[4] TNCH countered that it only reduced Mr. Boyd's hours because the residents were returning to school and it hired live-in residential counselors. TNCH stated that Mr. Boyd's reduction in hours had nothing to do with his workers' compensation injury. Ms.

---

[2] TNCH is a behavior modification program providing residential care for males thirteen to eighteen years old.

[3] A shift worker works a particular shift rather than being a live-in residential counselor/house parent.

[4] Mr. Boyd testified about various incidents involving himself and Mr. Johnston, which he believed provided the impetus for the reduction in his hours. However, detailing those incidents is not necessary for a determination in this matter.

Lawson testified that she thought TNCH cut another employee's hours around the same time as Mr. Boyd's reduction. However, on cross-examination, she acknowledged that she could not confirm that to be the case because she did not have the personnel files with her in the courtroom.

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an Expedited Hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

In this case, Mr. Boyd asked the Court to award temporary partial disability benefits. Temporary partial disability benefits are a category of vocational disability distinct from temporary total disability benefits. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015); *see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not, reached maximum recovery." *Id.,* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Temporary partial disability benefits consist of sixty-six and two-thirds percent of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in his partially disabled condition. *See* Tenn. Code Ann. § 50-6-207(2) (A) (2015).

In the *Jones* case, the Appeals Board stated:

Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a *sufficient number of hours* and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability.

3

*Id.* at *6 (Emphasis added). The Appeals Board discussed that a termination due to violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits. The Board did not address whether an employer is relieved of providing temporary partial disability benefits when it drastically reduces the hours of a temporarily disabled employee treating for a work injury. However, the Court interprets the Board's use of the language "sufficient number of hours," to mean that an employer will not be relieved of providing temporary benefits to a partially disabled employee merely by providing work at the same rate of pay but only for two hours a day rather than the employee's regular eight-hour day.

Further support for this Court's interpretation is found in *Young v. Young Electric Co.*, No. 2016-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 41, at *12 (Tenn. Workers' Comp. App. Bd. Sept. 14, 2016), where the Appeals Board noted that, "Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to temporary disability benefits if the employee is able to work *without loss of income.*" (Emphasis added.)

In this case, the parties do not dispute that Mr. Boyd was returned to work within his restrictions. Therefore, the Court must address whether TNCH provided work for a sufficient number of hours, such that Mr. Boyd did not sustain a loss of income from the time TNCH reduced his hours to the time Dr. Ivy released him to full-duty work.

Mr. Boyd introduced copies of his paystubs into evidence as Exhibit 2, and the parties stipulated that Mr. Boyd's average weekly wage is $559.68. The following table reflects the comparison of Mr. Boyd's pay from August 16, 2015, (reduction in hours) until November 21 (Dr. Ivy released Mr. Boyd to regular duty work on November 17):

| Dates | Pre-injury AWW | Pay | Difference |
|---|---|---|---|
| 8/16-8/29 | $559.68 | $246.11 | $313.57 |
| 8/30-9/12 | $559.68 | $216.10 | $343.58 |
| 9/13-9/26 | $559.68 | $273.13 | $286.55 |
| 9/27-10/10 | $559.68 | $246.11 | $313.54 |
| 10/11-10/24 | $559.68 | $423.19 | $136.49 |
| 10/25-11/7 | $559.68 | $234.11 | $325.57 |
| 11/8-11/21 | $559.68 | $294.13 | $265.55 |
| | | | |
| | | Total difference: | $1,984.85 |

As reflected in the table above, Mr. Boyd established he did sustain a loss of income during the time period of reduction in hours while he was still treating for his injury and under medical restrictions. The difference between Mr. Boyd's pre-injury average weekly wage and the wages he was able to earn in his disabled condition totals

$1,984.85, and sixty-six and two-thirds of that equates to $1,323.89.

TNCH took the position it should not be responsible for payment of temporary partial disability benefits since Mr. Boyd's hours, and hence his income, were reduced for reasons unrelated to his work injury. TNCH cited *Hackney v. Integrity Staffing Solutions*, No. 2016-01-0091, 2016 TN Wrk. Comp. App. Bd. Lexis 29 (Tenn. Workers' Comp. App. Bd. July 22, 2016), in support of its position. The Court finds TNCH's reliance on *Hackney* misplaced because in that case the employer offered the employee work at the same number of hours and same pay. The only difference was the hours were in a different shift, and Ms. Hackney declined the offer of work solely for the personal reason that she was unable to secure childcare.

The Court does not fault TNCH for making a business decision to reduce Mr. Boyd's hours and acknowledges that TNCH is not required to provide the same number of hours for Mr. Boyd to work. However, based on the previously cited case law, if TNCH does not offer Mr. Boyd a job making the same as his pre-injury income, and Mr. Boyd is unable to find employment elsewhere in his disabled condition,[5] TNCH is responsible for payment of temporary partial disability benefits. The purpose of temporary partial disability benefits is to provide income supplementation (when appropriate) to workers' compensation claimants under medical restrictions prior to reaching MMI. Mr. Boyd (an injured workers' compensation claimant under restrictions while receiving medical treatment) should not be penalized with a decrease in income for sustaining a compensable work-related injury. TNCH did not terminate Mr. Boyd for cause, nor did he refuse to work a different shift. Instead, Mr. Boyd's reduction in hours occurred through no fault of his own.

After careful consideration and applying the law to the facts of this case, the Court holds that Mr. Boyd has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on the issue of temporary partial disability benefits. Therefore, his request for past temporary partial disability benefits is granted in the amount of $1,323.89.

**IT IS, THEREFORE, ORDERED** as follows:

1. Payment of past-due temporary partial disability benefits in the amount of $1,323.89 shall be made for the period from August 16 to November 17, 2015.

2. This matter is set for an Initial (Scheduling) Hearing on January 23, 2017, at 9:30 a.m. Eastern time.

---

[5] TNCH did not offer any testimony or evidence to suggest that Mr. Boyd earned wages for any other employer from August 16 to November 17.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 14th day of November, 2016.**

**HON. LISA LOWE KNOTT**
**Workers' Compensation Judge**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Lisa Lowe Knott, Court of Workers' Compensation Claims. The parties must call 865-594-0109 or 855-383-0003 toll free to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be

6

made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Technical Record:
- Petition for Benefit Determination, filed April 14, 2015;
- Dispute Certification Notice, filed June 2, 2015;
- Request for Expedited Hearing, issued August 1, 2016;
- Employer's Objection to Decision on the Records and Motion for Full Evidentiary Hearing, issued August 4, 2016;
- Employer's Response to Employee's Request for Expedited Hearing, filed August 8, 2016;
- Employee's Response to Employer's Objection to Decision on the Record and Motion for Full Evidentiary Hearing;
- Order Denying Request for A decision Based Upon Review of the File and Granting Request for an In-Person Evidentiary Hearing, entered August 16, 2016;
- Employer's Pre-Hearing Statement in Response to Request for Expedited Hearing, filed October 4, 2016; and
- Employer's Witness and Exhibit List for Expedited Hearing, filed October 4, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
- EXHIBIT 1: Affidavit of David Boyd;
- EXHIBIT 2: Mr. Boyd's Paystubs;
- EXHIBIT 3: Key Risk Insurance TTD Payment Sheets;
- EXHIBIT 4: Medical Records of Dr. Robert Ivy, Knoxville Orthopedic Clinic; and
- EXHIBIT 5: Affidavit of Human Resources Manager, Dana Lawson.

Stipulations:
The parties stipulated Mr. Boyd's average weekly wage is $559.68 and the compensation rate is $374.14.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 14th day of November, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| David Boyd, Self-Represented Employee | X | | X | David Boyd 706 Valley Hill Lane Knoxville, TN 37922 Daveboyd@chartertn.net |
| Marianna Jablonski, Esq. Employer's Attorney | | | X | mjablonski@wimberlylawson.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

9